THE STATE OF IOWA v. PAT HANAPHY, Appellant.

117   15
129   522

117   15
141   173
141   174
141   176
o141  177

117   15
f144  392

**Liquor Selling:** STATE PROSECUTION: *Interstate commerce.* Where a traveling salesman, whose principal was engaged in the sale of intoxicating liquors in Illinois, accepted an order for the sale of liquors in Iowa, which order was sent to his principal in Illinois, subject to the latter's acceptance or rejection, and the liquor was shipped by express C. O. D. from the principal to the buyer, the transaction constituted interstate commerce; and hence such salesman was not subject to prosecution under Code, section 2382, as amended by Acts Twenty-eighth General Assembly, chapter 74, prohibiting any person soliciting or acceptng any order for the purchase of liquors, or from aiding in the delivery or distribution thereof.

*Appeal from Jefferson District Court.*—HON. F. W. EICHELBERGER, Judge.

THURSDAY, MAY 15, 1902.

APPEAL by defendant from a judgment of conviction upon charge of violating the provisions of section 2382 of the Code. The facts are stated in the opinion.—*Reversed.*

*D. J. O' Connell* for appellant.

*Chas. W. Mullan,* Attorney-General; *Chas. A. Van Vleck,* Assistant Attorney-General; *Arthur G. Jordan,* County Attorney, and *Raney & Simmons* for the state.

*C. S. Elgutter, Finley Burke* and *C. B. Aitchison* filed a brief as *amici curiæ.*

WEAVER, J.—The prosecution in this case was instituted before a justice of the peace upon an information in the following form: "The defendant is accused of the crime of soliciting, taking and accepting an order for the purchase, sale and shipment of intoxicating liquor, for

that the defendant, on the —————— day of March, 1901, at the township of Fairfield, in the county of Jefferson and the state aforesaid, did solicit, take, and accept an order for the purchase, sale, and shipment of intoxicating liquor; contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Iowa." And the defendant being convicted by the magistrate, an appeal was taken to the district court. The trial in the district court was had upon an agreed statement of facts in the following words: "Now, in this cause come the parties, the defendant appearing in person and by attorney, and in open court agree upon the following as a statement of the facts upon which said cause shall be submitted to the court: That defendant is a resident of Des Moines county, Iowa; that he is the traveling salesman of the Dallas Transportation Company, liquor dealers, a corporation organized under the laws of the state of Illinois, and whose principal place of business is at Dallas City, Illinois, said corporation being a citizen of the state of Illinois. That the business of said defendant is to travel for the said Dallas Transportation Company to solicit and take orders for the purchase, sale, shipment, and delivery of intoxicating liquors. That as such representative, on or about the —————— day of March, 1901, the said defendant, in the city of Fairfield, Jefferson county, and state of Iowa, did solicit, take, and accept from one Robert Corr an order for certain intoxicating liquors, to wit, one gallon of alcohol, said order being by him taken as the representative of the Dallas Transportation Company, and which order was filled by the shipment of said liquor by express to Fairfield, Iowa, from Dallas City, Illinois, the same being consigned to the said Robert Corr and shipped C. O. D. It is agreed that at the time said order was solicited the liquor in question was in the state of Illinois. It is further agreed that all the orders taken by the defendant are sent to his prin-

cipal in Dallas City, Illinois, subject to the approval or disapproval of said principal. And it is agreed by the defendant that he waives a jury, and submits his cause to the court, and authorizes the court to find a verdict of guilty or not guilty, as he may determine upon the foregoing statement of facts and the law applicable thereto." Upon this evidence the defendant was again convicted, and fine and costs adjudged against him and from such judgment he appeals to this court.

The section of the statute upon which the charge against defendant is founded reads as follows: "Sec. 2382. No one, by himself, clerk, servant, employe or agent, shall, for himself, or any person else, directly or indirectly, or upon any pretense, or by any device, manufacture, sell, exchange, barter, dispense, give in consideration of the purchase of any property or any services or in evasion of the statute, or keep for sale, any intoxicating liquor, which term shall be construed to mean alcohol, ale, wine, beer, spirituous, vinous and malt liquor, and all intoxicating liquor whatever, except as provided in this chapter, or solicit, take or accept any order for the purchase, sale shipment, or delivery and distribution of any such liquor, or aid in the delivery and distribution of any intoxicating liquor· so ordered or shipped, or own, keep or be in any way concerned, engaged or employed in owning or keeping any intoxicating liquor with intent to violate any provision of this chapter, or authorize or permit the same to be done; and any servant, employe or agent engaged or aiding in any violation of this chapter shall be charged and convicted as principal; provided, that nothing herein shall prohibit traveling salesmen soliciting orders for the purchase, sale and shipment of intoxicating liquors, from persons legally authorized to sell or dispense the same." Code, section 2382, as amended by Acts Twenty-eighth General Assembly, chapter 74. That defendant did "solicit,

take and accept an order for the purchase, shipment, and delivery of intoxicating liquor" is conceded of record, and the one question raised by the appeal is whether such transaction comes within the definition of interstate commerce, and is therefore exempt from punishment as an infraction of the law of the state. This involves an interpretation and application of section 8, article 1, of the Constitution of the United States. Upon this, as all other federal questions, we have to look to the supreme court of the United States for controlling precedents, if any exist; and such examination makes it reasonably clear that the proposition contended for by the appellant must be considered as *res adjudicata.* In the first instance, it is well settled that the business of "drumming" or soliciting orders for goods to be shipped from one state to another is a legitimate feature of interstate commerce, and cannot be hampered or restricted by license tax or other restrictions imposed by a state or minor municipality. *Robbins v. Taxing District,* 120 U. S. 494 (7 Sup. Ct. Rep. 592, 30 L. Ed. 694); *Vance v. W. A. Vandercook Co.,* 170 U. S. 438 (18 Sup. Ct. Rep. 674, 42 L. Ed. 1100); *Asher v. Texas,* 128 U. S. 129 (9 Sup. Ct. Rep. 1, 32 L. Ed. 368). Under these and other like holdings the right of the defendant to take the order in controversy for a shipment from another state is beyond the power of this state to prohibit or punish, unless we find ourselves able to hold that the character of the shipment brings it within the category of acts which the state may prohibit by an exercise of its inherent police power without violation of the constitutional provision referred to. Were we at liberty to follow the reasoning which seems to us satisfactory, we should be disposed to hold the police power of the state sufficient for that purpose, and such conclusion would find very substantial support in the adjudications. See *Mugler v. Kansas,* 123 U. S. 662 (8 Sup. Ct. Rep. 273, 31 L. Ed. 205); *Boston Beer Company v. Massachusetts* 97 U. S. 25 (24 L. Ed. 989); *Sherlock v.*

*Alling*, 93 U. S. 99 (23 L. Ed. 819),—to say nothing of the celebrated New Hampshire, Massachusetts and Rhode Island cases reported in 5 How., 504, 12 L. Ed. 256, *Liquor License Cases* which have since been to some extent overruled. These authorities have not, however, been followed to the conclusion to which we have alluded. In *Bowman v. Railroad Co.*, 125, U. S. 515 (8 Sup. Ct. Rep. 689, 1062, 31 L. Ed. 700), it was held, in substance, that notwithstanding the individual state may, in the exercise of its police power, forbid the buying and selling of intoxicating liquors within its jurisdiction, such liquors still remain a legitimate subject of commerce and trade in the world of business, and as such, interstate traffic therein can be regulated and controlled by federal legislation alone. This holding is confirmed by *Walling v. Michigan* 116 U. S. 446 (6 Sup. Ct. Rep. 454, 29 L. Ed. 691); *Brown v. Houston*, 114 U. S. 622 (5 Sup. Ct. Rep. 1091, 29 L. Ed. 257); *Hall v. De Cuir*, 95 U. S. 485 (24 L. Ed. 547); *Vance v. W. A. Vandercook Co.* 170 U. S. 438 (18 Sup. Ct. Rep. 674, 42 L. Ed. 1100); *Leisy v. Hardin* 135 U. S. 100 (10 Sup. Ct. Rep. 681, 34 L. Ed. 128). In the last-mentioned case intoxicating liquors are expressly recognized as "subjects of exchange, barter, traffic, like any other commodity in which a right of traffic exists, and are so recognized by the usages of the commercial world, the laws of congress, and the decisions of the courts," and, while unqualifiedly upholding the power of the state to prohibit the manufacture and sale of such articles within its local jurisdiction as declared in *Mugler v. Kansas, supra*, and *Ellenbecker v. District Court*, 134 U. S. 31 (Sup. Ct. Rep. 424, 33 L. Ed. 801) it decides that up to such time as the imported liquors have arrived at their destination, and become mingled in the common mass of property in the state, the state has no power to interfere by seizure or any other action in prohibiting importation and sale by the foreign or non-resident importer. The court there says: "Whatever our in-

dividual views may be as to the deleterious or dangerous qualities of particular articles, we cannot hold that any articles which congress recognizes as subjects of interstate commerce are not such, or that whatever are thus recognized can be controlled by state laws amounting to regulations while they retain that character." To meet the difficulty thus presented, and give the individual state some effective power of self-defense against the abuse of the privileges of interstate commerce, the so-called "Wilson Act" was enacted, providing that intoxicating liquors shipped into a state "shall upon their arrival in such state be subject to the operation and effect of the laws of such state to the same extent and in the same manner as though such liquors had been produced in such state," etc. 26 States, 313, chapter 728. This statute has been made practically ineffective as a restriction of importation of liquors by the interpretation placed upon it in *Rhodes v. Iowa*, 170 U. S. 412 (18 Sup. Ct. Rep. 664, 42 L. Ed. 1088). It is there held that the words "upon their arrival within the state" apply only to the time when the liquors have reached their appointed destination and are delivered to the consignee, and that the only practical operation of this act is to permit the state to prohibit the sale by the consignee. To the same general effect are, *Scott v. Donald*, 165 U. S. 58 (17 Sup. Ct. Rep. 265, 41 L. Ed. 632) and *Vance v. W. A. Vandercook Co.*, 170 U. S. 438 (18 Sup. Ct. Rep. 674, 42 L. Ed. 1100) cases arising under the South Carolina state dispensary laws,—where it is held that, notwithstanding the Wilson Act, the state is without power to prohibit the importation of liquors. These holdings, it is needless to observe, render the power of the state to prohibit the traffic in liquors to a large extent nugatory, and leaves the agents of non-resident dealers to ply their trade with "bootleggers" and other resident violators of the law without effective hindrance; but we have only to declare

the law as we find it. It is proper to add that all these cases under the authority of which this appeal is disposed of have been decided by a divided court. The dissent of Justices Harlan, Gray, Waite, Shiras, and Brown is supported by very persuasive reasoning and great weight of authority; but, whatever we may think of the comparative merits of the arguments employed, we are in duty bound to follow the authoritative pronouncement of the court, whose decision upon this and kindred questions is final. Yielding to those precedents, we are constrained to hold that the transaction set out in the agreed statement of facts comes within the definition of interstate commerce, and that as such it cannot be made punishable under the laws of the state. In a late case the supreme court of Kansas, upon facts pratically identical with those now under consideration, has quite thoroughly reviewed the authorities, and arrives at a conclusion in harmony with this opinion. *State v. Hickox*,—Kan.—(68 Pac. Rep. 35).

The proposition strongly urged in argument by the state, that, the order being made for shipment of the liquors by express to be paid for on delivery here, makes a sale within this state, and therefore avoids the claim that it was an act of interstate commerce, we think is not sound. The question whether it was an act of interstate commerce, is not, we think determined by the place where the title to the property passed to the purchaser. It is conceded that the subject of the sale was in Illinois and owned by a resident of that state, that the purchaser was a resident of this state, and that the order contemplated the shipment of the property from the seller in Illinois to the purchaser in Iowa. All these acts—the seeking of the customer by the agent, the soliciting and taking of the order, its transmission to the house in another state, the shipment made therein, the transportation and delivery to the purchaser in this state—all unite to make up interstate commerce. The defendant, it should be remem-

bered, is not charged with the offense of-selling the liquors. The act for which he is sought to be held to criminal liability is the soliciting and taking of the order, and, if liable at all, his offense was complete the moment the order was obtained, even though his principal had never completed the sale thus negotiated. It is therefore, for the purposes of this case, immaterial whether the title passed to the purchaser when the property was delivered to the express company for transportation or when it reached its destination and was paid for The one question is, as we have before said, whether the taking of the order, under the circumstances, was a part of a transaction of interstate commerce. Upon that proposition we are compelled to hold in the affirmative.

The judgment of the district court is therefore RE-VERSED.